Curran, Dennis J., J.
This case arises out of a dispute over defective electrical engineering services the plaintiffs allegedly provided UMass Amherst. Due to the criticism of that work, the plaintiffs filed a four-count complaint that charged the defendants with defamation, intentional interference with contract, intentional interference with advantageous relationships and violations of the Massachusetts civil rights statute.
The defendants filed a motion to dismiss which, after briefing and argument, was allowed by the previous session judge (Kern, J.) who ruled:
Motion [ ] Allowed. Plaintiffs (sic) have failed to state essential elements of each count, (see Fleming v. Benzaquin, 390 Mass. 175, 187-88 (1983) (defamation), King v. Driscoll 418 Mass. 576, 587 (1994) (intentional interference with contractual relations): and Haufler v. Zotos, 446 Mass. 489, 504 (2006), violation of Mass. Civil Rts. Act.
Before me are the defendants’ motion for sanctions under both G.L.c. 231, section 6F and Mass.R.Civ.P. 11 in which they seek $5,704 for legal fees and costs in defending against this action. The plaintiffs respond by accusing the defendants of “extort[ion]” by the mere filing of this motion. Further, they demand sanctions against the defendants for doing so.
Both parties submitted memoranda in support of their positions. On March 5, 2009, a hearing was conducted on the defendants’ motion.
DISCUSSION
This lawsuit was directed at UMass and its Capital Projects Manager and Assistant Director of Campus Projects. UMass contracted with the plaintiffs to perform certain electrical engineering services. The individual defendants allege that the work was done shoddily and detailed their concerns in several emails. The plaintiffs charged them with four counts, dealt with seriatim.
Defamation
The communications at issue were several business emails that criticized the quality of the plaintiffs’ work. They express opinions, evidenced by the following excerpts
“. . .As far as I know, Dick has been at Facilities Planning longer than anyone; he carries a lot of clout and is very vocal with his opinions . . .” Email dated December 26,2006 from Steve to Azim Rawji. (Emphasis added.)
“. . . [W]e will recommend to the DSB to reject. . . any [ ] architect that includes ART and Azim due to his poor and mediocre performance on UMass Amherst projects.” Email dated December 4,2007 from John Mathews to Nault Architects, Inc. (Emphasis added.)
“. . .As with similar designers in this situation, we are always willing to meet and discuss what we feel are your shortcomings and how you can get back into good stead with UMass.” Email dated December 5, 2007 from John Mathews to Azim Rawji. (Emphasis added.)
*284 Moreover, the plaintiffs seek to label the following email as “racially charged.”
“. . .1 have a big problem with Azim’s continued non-performance on the fire alarm inspection issue. I am going to have to have to sit down and rewrite the application for inspection for the Amherst first department today in order to preserve the schedule because Azim cannot get room numbers and other simply details correct and is simply to (sic) lazy to retype battery calculation and other documents. He submitted SAR’s data unchanged and did not even highlight that data that applied to this project . . .” Email dated December 4, 2007 from Richard Paul Nathhorst to Vault Architects, Inc.
This email could not rationally be so interpreted. In short, the charges of defamation and racial bias are simply ludicrous.
Interference with Advantageous and Contractual Relations Claim
Second, the plaintiffs’ allegations of intentional interference with contractual and advantageous relationships are baseless. The plaintiffs were unable to plead that either individual defendant actually interfered with any contract or that either person was operating out of an improper motive.
State Civil Rights Claim
Finally, this claim must fail because the key piece of evidence upon which the plaintiffs rely in their complaint — the email quoted above — cannot plausibly be said to be racial in either tone or word.
In summary, this lawsuit was, and is, groundless. The plaintiffs apparently could not abide criticism of their work product and decided to strike back, using in terrorem tactics. But retaliation serves as a poor foundation for the filing of a lawsuit.
Moreover, the lack of good faith is evidenced at least in part by the plaintiffs’ use of pejoratives such as “meaningless charade,” “continuous public attack,” “verbal trash[ ],” “plagiarism,” “scandalous attack,” “unequivocally libelous,” “deceptive,” “unfounded attacks on integrity,” “strong arm tactics” and “blackballed.” While such insults may titillate when drafting them in the quietude of a law office, they shrivel when exposed to the bright light of a courtroom.
Civility, while not fashionable, would have been preferred in these proceedings. The incendiary accusations lobbed by the plaintiff Azim facilitate a finding, at this procedural stage, that the plaintiffs’ claims were not advanced in good faith.
Thus, this case was wholly frivolous, insubstantial and not advanced in good faith under G.L.c. 231, section 6F. Moreover, because plaintiffs’ counsel admits that the same legal standard governs inquiries under G.L.c. 231, section 6F and Rule 11, he must be held responsible as well. (See pp. 5-6 of the Plaintiffs’ Opposition.) But degree of culpability plays a part, too. From the court’s discernment of conduct during oral argument, the client appears to have been the driving force on this misadventure. This could have been avoided had counsel taken a stronger role in managing his client’s expectations.
I have reviewed moving counsel’s affidavit and find his estimate of time and his hourly rate to be reasonable. I understand how it could take ten hours to contact and interview witnesses in such a fact-driven case. Although it would have been preferable that counsel keep contemporaneous time records, such an error is not fatal.
Finally, the purpose of litigation is neither to salve hurt feelings nor indulge in personal vendetta at public expense. These were precisely the motives of the plaintiffs. There was never a legal basis for this lawsuit; another judge so found — and I concur.
ORDER
For the foregoing reasons, the defendants University of Massachusetts, Richard Nathhorst and John Mathews’s motion for sanctions under G.L.c. 231, section 6F against the plaintiffs Azim Rawji and ART Engineering Corporation is ALLOWED in the sum of $5,454.00. The motion for a Rule 11 sanction against plaintiffs’ counsel is ALLOWED in the sum of $250.00.
Judgment shall enter forthwith for these defendants against the plaintiffs Azim Rawji and ART Engineering Corporation jointly and severally in the sum of $5,454; further, judgment shall enter against plaintiffs’ counsel for $250.